162083 Benjamin Riggs, et al. v. Margaret Curran, et al. Mr. Rainer, good morning. Good morning, Andrew Rainer for the appellants. May I also reserve two minutes? You may. Thank you. I'd like to begin by briefly talking about the background to the Wind Power Project that is an issue here. We provided in our addendum, in particular on page 19, the statute that the Royal Island Legislature passed that basically dictated that this project be built and how it should be charged. And that is it should be charged at the expense of $500 million to rate payers. And when the initial power purchase agreement for this plant was submitted to the Rhode Island Public Utilities Commission, the Utilities Commission found that it was not in the interest of rate payers. And the legislature actually turned around and changed the standard that the Utilities Commission should apply, directed them to consider it again, applying a standard enacted specifically for that project. Unless I'm missing something, I think you're arguing the merits of your case, but I think you've been thrown out on the statute of limitations ground. Yes, Your Honor. And the reason I brought this up is because it is sometimes when things are done in a rush, when there are political considerations that invade the regulatory process, that mistakes are made. Mistakes, in this case, that violate the Federal Power Act and the Constitution. Now, why should we be allowed to reach the merits here? And, Judge Kenyatta, I'd just like to say one more thing about the merits, which is that the Hughes v. Talent Marketing case, which we rely upon heavily, and we actually tried to get the district court to grant some re-judgment right at the very beginning of the case because we were so convinced that that case would strike down the funding of this project, and the court declined to do so and instead considered the statute of limitations issue. Now, what is the principle with respect to the statute of limitations that the appellants are asking you to uphold? And we are not asking either of two extremes that were discussed in the district court. Chief Judge Smith held out two things. On the one hand, the notion that the statute of limitations began to run on the day the Utilities Commission acted. And on the other hand, that the statute of limitations would not run until bills were actually sent to people charging the excess power cost. And our position is actually in between. And the reason, from a public policy perspective, that that is a, I'm urging you to consider that, is the first position, the position that the statute started to run on the day the Utilities Commission acted, suffers from the defect that it was not ripe and that, as is in so many of this court's ripeness decisions, the court needn't necessarily get to those issues because the Utilities Commission order was conditioned on numerous subsequent public approvals, including the Army Corps of Engineers, the Rhode Island Coastal Resources Management Council approvals for the landing cable. So the order was not a done deal because those events, just as in this court's City of Fall River case, had not happened. Isn't that virtually all new projects, transmission, generation, construction, whatever? I'm not sure I've ever seen either a FERC or a PUC order that doesn't have some conditions in it. And yet we routinely, the state and federal courts routinely hold, if you don't like that order and you want to appeal it, you have 30, 60, 90 days, whatever the applicable period is. So certainly they're deemed ripe for purposes of direct judicial review. We're now talking about collateral review and what the statute of limitations should be for that. And why should it be five years? Okay. Well, first of all, I'd like to separate out whether a federal statute applies and what the accrual date is. With respect to the accrual date, you're right. Why should we postpone the accrual date until some uncertain event that is therefore going to be case specific rather than having a bright line test that once the PUC finally acts and issues an order that is ripe enough that it could be subject to direct judicial review, then everybody knows that's the starting date for either your three or five year, whichever it is. And my answer, sir, is that I'm asking the court to follow what it did in the City of Fall River case, which was also a FERC case, which was also a case in which the FERC order was conditioned on subsequent approval. And the court said, there is still so much water under the dam here on this project. That was the liquefied natural gas project, the Weaver's Cove liquefied natural gas. There's still so much water to come under the dam here that it is we, this court, is not going, it finds that it is not right. And then later in that same case, when some of those other approvals came before the court, the court said, yes, now, now that we've gotten into the stage where these approvals are either actually happening or not happening, now we're going to wait. Now, I do want to just touch for a moment on this other extreme that Judge Smith talked about, that wait until the bills arrive. Now, we are not asking that. In fact, in paragraphs 23 to 25 of our complaint, which we cite, which we included in the appendix at page 19, we made clear that the reason for when we brought this case was that the approvals, those subsequent approvals, the Army Corps of Engineers, the Rhode Island Coastal Zone, the Coastal Management Commission, the approvals for the landing cable, those had all happened. And then we were in the realm that the court talks about when it says imminent, certainly impending. That is the standard that this court has said governs ripeness. And I'm asking the court to follow that standard, not when the conditional order is first entered and there's still all these things that can happen that could affect the viability of the project and might eliminate the need for a decision on the one hand. And on the other hand, not after the tens of millions of dollars have been spent. And that's exactly when we brought this case. If I may address briefly, then, the issue of whether to apply a federal statute of limitations. I mean, I respectfully submit that if the court rules, as I'm urging, with respect to approval, the court does not need to reach the federal statute question. But if the court reaches a federal statute question, we ask you to rule here, which generally in the cases that the other side has cited, nobody asked for a particular federal statute to apply. We did. We are asking and we did ask. Thank you very much. Good morning, Your Honor. The linchpin of the appellant's argument is that their challenge to the PUC's authority to approve the power purchase agreement was not ripe until Deepwater Wind first received an assent from the CRMC, a permit from the Army Corps, a permit for the submarine cable, and then closed on financing. That argument, we believe, is without merit for at least three reasons. First, that challenge to the PUC authority was ripe the day the order was issued by the PUC based on this court's two-pronged standard for determining ripeness. The first prong, I think you've all written about this in your decisions I've had the pleasure of reading, is fitness. Is the claim dependent upon future events? Now, this claim is the claim that the PUC lacked jurisdiction, that it usurped FERC's jurisdiction. Your Honor, that claim was complete the day the PUC issued its order. No future event affected the merits of that claim. As Judge Kayada said in the Barnesville case, it hinged on events that had already occurred. It was complete. So the plaintiffs go to the next step, which goes to my second reason, which is they say, but wait a minute, future events could have halted the project. What if the CRMC didn't grant a permit or an assent? What if the Army Corps didn't grant a permit? What if financing didn't take place? Well, again, I think Judge Kayada addressed that in the Barnesville case where they argued NSTAR and the town argued that, wait a minute, NSTAR's terminated the contract with Cape Wind. They've terminated the contract, so there's a likelihood that that termination could halt the project. And they argued mootness, and they also argued ripeness in that case. And the court in its decision addressed that, and the court said the potential for future mootness does not render a case unripe. This case on its own was complete, our case, when the PUC order was issued. The fact that three years later the CRMC might not issue an assent did not impact the fact that the initial barrier was cleared and could be contested the day that the PUC issued that order. Now that leads to a third question, which was addressed in the Weaver's Cove decision, which is, but what if there's more than one barrier? What if the decision that the court's being asked to render only clears one barrier and not all of the barriers? And this court dealt with that issue in the Weaver's Cove decision, where they were dealing with whether or not CRMC assents were necessary or preempted by FERC jurisdiction. And in that case, the plaintiffs, the challengers to the project, pointed out a whole litany of challenges that made it exceedingly unlikely that the Weaver's Cove project could succeed. But Chief Judge Lynch at the time addressed that, and she said, it's clear that this case will deal with and resolve one barrier, and that's enough. It serves a useful purpose. It doesn't have to clear all of the barriers. It has to deal with at least one of the barriers, which that case did, which is exactly what would have happened here. Had they challenged the PUC order within the appropriate statute of limitations period, that barrier would have been dealt with, and it could have been dealt with in a way, as again Judge Gaiatus said in the Barnesville case, it would have informed the party's actions and allowed them to determine how to spend their resources without waste. Deepwater Wind is deciding whether to go forward on a $300 million investment on the first offshore wind farm in the United States. If the PUC didn't have jurisdiction, wouldn't that be dispositive? If the PUC didn't have authority and there was no PPA, the project could not have gone forward, Your Honor. Absolutely right. And that's why it was so important, if someone was going to challenge that, to challenge it promptly and not to wait and sit on their hands for five years and then challenge it at the back end. Now let me deal with the Fall River case that Judge Torre decided. That case doesn't help the appellants at all here. In the Fall River case, the decision issued by FERC was expressly conditional. FERC said this approval is conditioned on, among other things, as the court noted in the decision, approved by the Department of Interior under the Scenic and Wild River Act, approval, I believe, by the United States Coast Guard dealing with how the ships are going to run up and down to service the facility. And actually, if you read the FERC decision, there are at least five state government agencies that had to make approvals as conditions of the FERC order. If you read the order, it's littered with conditions. Appendix B contains 77 paragraphs. Now, what that meant is, and what the court said in Fall River, they said, we can't rule on the FERC order because it's conditional. If those conditions were not met, Your Honor, let's assume that the Department of Interior did not approve it, then that FERC order would have gone from an order of approval to an order of rejection. So why would the court rule on an order that was not final until and unless the conditions were met? Now, until they were met, you didn't know if it was an approval or a rejection. It was expressly conditional. Now, contrast that to the PUC order. For some reason, the appellants ridiculed us for this, but if you look at the PUC order, the actual order, it is ordered in three lines. The purchase power agreement between the Narragansett Electric Company and Deepwater Wind Block Island LLC on June 30, 2010, is hereby approved. There is no condition, not a single one, in the PUC order. What the appellants confuse here is they say, oh, but wait a minute, they say, but it approved to PPA, and the PPA had conditions. Well, of course, every power purchase agreement is going to have conditions in it, but that wasn't the issue in Fall River. The issue in Fall River and the issue before this court is whether the administrative order that's being considered is final. And the PUC order being considered was final. No subsequent event outside of the PUC was going to affect the finality of that order. It was what it was. What could happen is what Judge Kayotta dealt with in Barnesville. It could be that a future event would make it move. If we stumbled on another barrier, which we didn't, we got through them all. But that's a very different situation from Fall River, where the underlying administrative order was expressly conditional. And you don't have it. As a matter of fact, Your Honors, we cited the long-term contracting statute, which is the statute under which this approval was granted, and I neglected to cite to the court the provision in the statute which actually says the commission shall issue a written decision to accept or reject the amended power purchase agreement without condition no later than 45 days from the filing of the amended power purchase agreement. Your Honors, that can be found at RIGL 39-26.1-7. The PUC followed the law. They issued an order that was unconditional and that was right for review the day it was issued. Your Honors, one other issue, just very quickly. The argument about the statute of limitations we've covered in the briefs. I think it's clear this court has applied the Rhode Island Personal Injury Statute, the constitutional claims, and 1983 claims, and proper claims, exactly as Judge Smith did here in the district court. So there's enormous precedent for that. The appellant's claim that 2642 or 2462, the enforcement statute applies, is clearly wrong as a district court found. This is not an enforcement action. It's not an enforcement action dealing with a civil penalty, with a fine, or a forfeiture. The state statute was the most analogous statute. Thank you, Your Honors. Thank you. Mr. Wald. Good morning. Good morning. May it please the court, Leo Wald for the Rhode Island Public Utilities Commission. The commission joins with the arguments of Deepwater Wind and concurs with its request to this court to affirm the decision of the district court dismissing the complaint for lack of timeliness. For the purposes of its argument before this court, the commission rests on its brief. I'd be happy to try to answer any questions that I can for the court. Otherwise, thank you for this opportunity to address the court on behalf of the commission. Thank you. Any questions? Thank you. Mr. Fitzpatrick. Fitzgerald, sorry. Oh, Fitzpatrick. Your Honor. Thank you. May it please the court. Michael Fitzpatrick of Law Firm Day Pitney on behalf of Apelli, Narragansett Electric Company doing business as National Grid. National Grid also joins in the arguments set forth by Mr. Petros on behalf of Deepwater Wind. We would be happy to answer any questions that the court may have. But beyond that, we have nothing further to add to Mr. Petros' arguments. Thank you. Thank you. I'd like to address Mr. Petros' attempt to distinguish the City of Fall River case. He's basically arguing that because there were two pieces of paper that set forth the conditions, an order and the PPA which set forth the conditions, that the court should give that different legal effect than an order that had the conditions in one piece of paper. And, Frank, as I said in my reply brief, I think that's silly. I'd ask the court to look at the list of conditions that appears in the appendix. It is page A112. And it is the same list of conditions, almost the same among several of the same regulatory agencies that had to approve. And it was for that reason that the court in City of Fall River said, it is not right. Now, with respect to the federal statute of limitations, I would like to point out that, yes, it's true that this court has applied a three-year personal injury statute of limitations from Rhode Island law to certain constitutional questions, typically things involving physical violence. It is also true that litigants in the cases that Mr. Petros cited have generally not offered an alternative federal statute. For example, in the Saranac Power case, he cites, it's the court pointed out specifically that the appellate had offered no alternative federal statute of limitations better suited to the objectives of the statute. Ms. Ryan, what does the PUC's jurisdiction have to do with conditions? A challenge to the PUC's jurisdiction, that doesn't change. I mean, either they had it or they didn't. Well, actually, Your Honor, I think that the question wasn't, we're not saying this is jurisdictional. We are saying that the particular, the way the PUC exercised its authority was contrary to the Federal Power Act. In other words, there were actions that the PUC could have taken that would not have run afoul of federal law. But you said they intervene in the wholesale markets, which is exclusive jurisdiction of FERC. That's a jurisdiction, I mean, as I understand your argument, state regulators have no ability to dictate the terms of wholesale market transactions under the Federal Power Act. And I thought that was your lead argument on the merits. It is our argument. Which is saying the state utility agency had no jurisdiction to compel what was compelled here. It was a bilateral contract, which you're treating as a wholesale contract. Perhaps I'm missing the thrust of the questions which are directed to whether we knew back when the PUC acted that there was something to challenge. And the answer is yes. And I'm not running away from that. What I'm saying, Your Honor, and it is the Barnesville case and the contrast with Fall River and Weaver's Cove, I respectfully submit, shows the reason why this court should not, should find that it was not right. What happened in the Barnesville case, as Your Honor recalls, is the court went ahead and ruled, which is it only ruled on the sovereign immunity question. And then within the next year, the financing for the Cape Wind went away, and the work that the court had done and the work the parties had done to litigate that case came to nothing. But I go back to a point made earlier. I have trouble imagining any substantial new utilities project of any type that wouldn't have as an implicit condition that the applicant, upon approval, would perform in accordance with their application. So the application is going to say, for example, they'll get financing. It's going to say they'll do this. They've got to do lots of stuff to perform. So if we said that those were conditions that postponed ripeness, we would very rarely in any one of these major transactions involving a lot of investment have a ripe order. You would always be postponing. Well, I think you're right, Your Honor. The City of Fall River case attempted to balance the interest, as I said before, on the one hand of the court. I mean, Your Honor, it costs a lot of money to come here, to invoke the machinery of the federal judiciary. I mean, that's not a small undertaking for individuals. So is it necessary for people to challenge the first order, or is it a more moderate course to say, as we are urging, that once the project has gotten down the road of those approvals, then it's really going to happen and they are really going to be affected by it? Then it's ripe. And again, respectfully, Your Honor, I do submit that that is what the City of Fall River case held. And it is different from saying we get to wait until they've spent tens of millions of dollars, they've actually put up the wind farm, and then we get to do it. No, we're arguing for something that's in between, saying day one, you've got to, you in this case, rate payers have to go to court and challenge this right now. Very expensive process on the one hand, when there are still lots of things that my clients, lots of proceedings that my clients participated in, they didn't sit on their hands, they went to the Coastal Management Commission, they went to the Army Corps of Engineers, they went to the municipal proceedings, they actually did, through that public participation process, try to vindicate their rights by not going to court. Thank you.